RONALD SELBY,                                )
                                             )
                    Plaintiff,               )     No. 16 C 3489
                                             )
          v.                                 )     Jeffrey T. Gilbert
                                             )     Magistrate Judge
BOARD OF TRUSTEES OF MORAINE                 )
VALLEY COMMUNITY COLLEGE,                    )
DISTRICT NO. 524, a/k/a MORAINE              )
VALLEY COMMUNITY COLLEGE;                    )
FRANCISCO ARTEAGA, in his official and       )
individual capacities; WILLIAM TOBIAS,       )
in his official and individual capacities; and )
GENERAL MCARTHUR, in his official and        )
individual capacities,                       )
                                             )
                    Defendants.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Selby has sued Defendants Board of Trustees of Moraine Valley Community College, District No. 524, a/k/a Moraine Valley Community College; Francisco Arteaga; William Tobias; and General McArthur (collectively, "Defendants"). This matter is now before the Court on Plaintiff's Motion for Partial Summary Judgment [ECF No. 57] and Defendants' Motion for Partial Summary Judgment [ECF No. 52]. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment [ECF No. 57] is denied and Defendants' Motion for Partial Summary Judgment [ECF No. 52] is granted.

## I.    BACKGROUND

### A. Facts

Moraine Valley Community College ("the College") is a community college located in the southwest suburbs of Chicago. Defendants' L.R. 56.1(a)(3) Statement of Uncontested Facts

("Defendants' SoF"), [ECF No. 53], ¶ 1; Plaintiff's Additional Statement of Undisputed Facts ("Plaintiff's Additional SoF"), [ECF No. 68], ¶ 2 at p. 9. Plaintiff Ronald Selby ("Selby") was an enrolled student at the College during the Fall 2014 semester, but he did not enroll for any classes in subsequent semesters. Plaintiff's Local Rule 56.1(a)(3) Statement of Undisputed Facts ("Plaintiff's SoF"), [ECF No. 59], ¶ 4; Defendants' SoF, [ECF No. 53], ¶ 2. Selby had an auditory processing disability that made it difficult for him to process information that he heard. Plaintiff's SoF, [ECF No. 59], ¶ 5. The College knew about Selby's disability and accommodated him when he was a student. *Id.* Defendant Officer Francisco Arteaga ("Officer Arteaga") and Defendant Officer William Tobias ("Officer Tobias") are campus police officers employed by the College. *Id.* ¶¶ 2, 3; Defendants' SoF, [ECF No. 53], ¶¶ 4, 5, 12; First Amended Complaint ("Complaint"), [ECF No. 44], ¶ 12 (alleging the College employed Officers Arteaga and Tobias); Defendant Moraine Valley Community College's Answer to Plaintiff's First Amended Complaint, [ECF No. 45], ¶ 12 (admitting the allegation); Defendant Arteaga's Answer to Plaintiff's First Amended Complaint, [ECF No. 47], ¶ 12 (same); Defendant Tobias' Answer to Plaintiff's First Amended Complaint, [ECF No. 48], ¶ 12 (same).

On March 20, 2015, at 9:00 a.m., the College held a financial literacy workshop. Defendants' SoF, [ECF No. 53], ¶ 7. Some unknown number of days before the workshop, Selby received a letter from the College that said the workshop was mandatory if he wanted to obtain financial aid for a future semester. Plaintiff's SoF, [ECF No. 59], ¶ 6; Plaintiff's Additional SoF, [ECF No. 68], ¶ 1 at p. 8–9; Letter from Moraine Valley Community College to Ronald Selby ("Letter"), [ECF No. 54-6]. Selby decided to attend, and, on the day in question, made it to the campus a little more than one hour before the workshop was scheduled to begin. Plaintiff's SoF, [ECF No. 59], ¶ 8. After taking care of some unrelated matters, Selby tried to

2

make his way to the workshop, but he struggled to find the right room because of inaccurate information given to him in the letter he had received from the College and by two College employees who he encountered during the morning of the workshop. *Id.* ¶¶ 8–13; Letter, [ECF No. 54-6].

Eventually, just a few minutes before the workshop was scheduled to begin, Selby walked into the College's Veterans Office, where he met Defendant General McArthur ("McArthur"). Plaintiff's SoF, [ECF No. 59], ¶ 14; Defendants' SoF, [ECF No. 53], ¶ 10. McArthur was employed by the College as the student success coordinator and the veteran's coordinator. Defendants' SoF, [ECF No. 53], ¶ 3. Selby asked McArthur if he knew where the workshop was being held. Plaintiff's SoF, [ECF No. 59], ¶ 14. McArthur not only gave Selby the information he needed but also accompanied him to the right room, which was S117B in Building S. *Id.* ¶ 15; Defendants' SoF, [ECF No. 53], ¶ 10; Plaintiff's Additional SoF, [ECF No. 68], ¶ 4 at p. 9. As they made their way to the workshop, McArthur told Selby, "[Y]ou know, you are late." Plaintiff's SoF, [ECF No. 59], ¶ 15; Defendants' SoF, [ECF No. 53], ¶ 10; Plaintiff's Additional SoF, [ECF No. 68], ¶ 4 at p. 9. Selby informed McArthur that he had been given inaccurate information about the location of the workshop, and the pair continued on their way together. Plaintiff's SoF, [ECF No. 59], ¶ 15; Plaintiff's Additional SoF, [ECF No. 68], ¶ 4 at p. 9.

The parties dispute whether McArthur also told Selby that, because of his late arrival, Selby could not attend the workshop and would have to reschedule. Plaintiff's Local Rule 56.1(b)(3) Response to Defendants' L.R. 56.1(a)(3) Statement of Uncontested Facts ("Plaintiff's Response to Defendants' SoF"), [ECF No. 68], ¶¶ 10, 12; Defendants' Response to Plaintiff's L.R. 56.1(a)(3) Statement of Uncontested Facts ("Defendants' Response to Plaintiff's SoF"),

[ECF No. 65], ¶ 15; Defendants' Response to Plaintiff's Additional Statement of Undisputed Facts ("Defendants' Response to Plaintiff's Additional SoF"), [ECF No. 69], ¶ 4. The parties also disagree about whether there was a sign posted on the door to room S117B that said anyone who arrived more than 10 minutes late would have to reschedule. *See* Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶¶ 8, 11.

Eventually, Selby and McArthur made it to room S117B. Plaintiff's SoF, [ECF No. 59], ¶ 16; Defendants' SoF, [ECF No. 53], ¶ 11. In a footnote in one of his briefs, Selby claims there is a factual dispute about whether he entered the room before the workshop began at 9:00 a.m. Plaintiff's Memorandum of Law in Support of Plaintiff's Partial Summary Judgment Motion ("Plaintiff's Opening Brief"), [ECF No. 58], at 5 n.2. Selby's Local Rule 56.1 filings, though, do not support the existence of such a dispute. Selby's Local Rule 56.1(a)(3) Statement and Local Rule 56.1(b)(3)(c) Statement are silent as to whether he entered the room before the presentation began. Defendants' Local Rule 56.1(a)(3) Statement contains a couple paragraphs indicating Selby was late. *See, e.g.,* Defendants' SoF, [ECF No. 53], ¶ 11 ("When McArthur and Selby arrived at the classroom, McArthur saw that the presentation had already started . . . ."), ¶ 13 ("[Selby] walked into the presentation approximately fifteen (15) minutes after the presentation had started."). In responding to at least one of these paragraphs, Selby did not address, much less dispute, the temporal component of Defendants' statement. *See* Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶ 11. In response to another, Selby addressed the issue but he did not assert, or cite evidence showing, that he arrived early or on time. *See id.* ¶ 13.[1] The

---

[1] In this response, Selby cites three deposition transcripts. Selby cites his own deposition testimony that he first met McArthur at around 8:59 or 9:00 a.m. Deposition of Ronald Selby, [ECF No 54-1], at 36. Selby did not testify in the cited excerpt when he actually entered room S117B. Later in his deposition, Selby testified that the instructor already was speaking when he entered the room. *Id.* at 40–41. Next, Selby cites the deposition testimony of Joseph Scroggins, who led the workshop, that Selby arrived about 15 minutes and 10 slides into the presentation. Deposition of Joseph Scroggins, [ECF No. 54-5], at 26 --

Court, therefore, can and will deem admitted for the purposes of summary judgment Defendants'

statement that Selby arrived some amount of time after the workshop began. *See Curtis v.*

*Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("The non-moving party's failure . . .

to cite any admissible evidence to support facts presented in response by the non-moving party

render the facts presented by the moving part as undisputed.").

    After entering the workshop late, Selby signed an attendance sheet given to him by a

College employee. Plaintiff's SoF, [ECF No. 59], ¶ 16. Then he stood at the back of the room

and listened to the presentation. Defendants' SoF, [ECF No. 53], ¶ 13. In the meantime,

McArthur contacted the campus police to have Selby removed from the room. *Id.* ¶ 12. The

campus police dispatch sent a call out saying that a student was refusing to leave room S117B.

*Id.* ¶ 14; *see also* Deposition of Francisco Arteaga, [ECF No. 54-3], at 26.

    Officers Arteaga and Tobias heard the call over their radios and responded to it.

Defendants' SoF, [ECF No. 53], ¶¶ 4, 5 14; *see also* Plaintiff's SoF, [ECF No. 59], ¶¶ 18–19.

The Officers arrived at S117B separately. Defendants' SoF, [ECF No. 53], ¶ 15. Officer

Arteaga got there first, reaching S117B within 5 minutes of McArthur's call to dispatch. *Id.* ¶

12. Officer Arteaga met with McArthur outside the room. *Id.* ¶ 15; Plaintiff's Additional SoF,

[ECF No. 68], ¶ 6 at p. 9. At that time, Officer Arteaga knew McArthur was not the instructor

for the workshop, and he did not know if McArthur was associated with the workshop in any

way. Plaintiff's SoF, [ECF No. 59], ¶ 52; Plaintiff's Additional SoF, [ECF No. 68], ¶ 8 at p. 10.

McArthur informed Officer Arteaga of the following: a student arrived late, McArthur had told

the student to leave the room because he arrived late, and the student did not comply. Plaintiff's

---

27. Finally, Selby cites McArthur's deposition testimony, in which McArthur said that, while he was not sure of the exact time when Selby and he arrived, it was "after the hour." McArthur Deposition of General McArthur, [ECF No. 54-2], at 35. None of this evidence shows Selby arrived at or before the time the workshop started.

SoF, [ECF No. 59], ¶ 20; Defendants' SoF, [ECF No. 53], ¶ 15; Plaintiff's Additional SoF, [ECF No. 68], ¶ 6 at p. 9. McArthur then identified Selby, who still was standing in the back of the room, as that student. Plaintiff's SoF, [ECF No. 59], ¶ 20; Defendants' SoF, [ECF No. 53], ¶ 15; Plaintiff's Additional SoF, [ECF No. 68], ¶ 6 at p. 9.

After McArthur provided this information, Officer Arteaga entered the room. Plaintiff's SoF, [ECF No. 59], ¶ 21. The instructor, Joseph Scroggins, had not stopped his presentation when Selby entered the room, and he did not stop when Officer Artease entered the room, although some students looked back at Officer Arteaga. *Id.* ¶¶ 17, 21; Plaintiff's Additional SoF, [ECF No. 68], ¶ 7 at p. 10. Officer Arteaga made contact with Selby and asked him to leave the room, but Selby did not comply. Plaintiff's SoF, [ECF No. 59], ¶ 22. Eventually, Officer Tobias made it to S117B, saw Officer Arteaga trying to speak with Selby, and went to stand nearby them. Plaintiff's SoF, [ECF No. 59], ¶¶ 54–56; *see also* Defendants' SoF, [ECF No. 53], ¶¶ 16-17. At some point, the room was cleared of everyone except Selby. *See* Plaintiff's SoF, [ECF No. 59], ¶ 34 (Only Officer Arteaga was present at that time.); Defendants' SoF, [ECF No. 53], ¶ 16 (Both officers were present when S117B was cleared.).

The Officers ordered Selby to leave the room and warned that he would be arrested for criminal trespass if he did not comply, but Selby still did not leave. Plaintiff's SoF, [ECF No. 59], ¶¶ 25, 37, 56, 58–59; Defendants' SoF, [ECF No. 53], ¶ 17–18; *see also* Plaintiff's SoF, [ECF No. 59], ¶¶ 22, 31 (indicating Officer Arteaga also ordered Selby to leave before emptying the room and before Officer Tobias arrived).[2] When told he was not supposed to be there, Selby asked, "Who told you I'm not supposed to be here?" Defendants' SoF, [ECF No. 53], ¶ 19; Plaintiff's SoF, [ECF No. 59], ¶ 23. The parties dispute whether Selby responded to the officers

---

[2] Officers Arteaga and Tobias also ordered Selby to identify himself. Plaintiff's SoF, [ECF No. 59], ¶ 56, 58–59; Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶ 17.

in other ways, including by identifying himself and asking why he was required to leave. *Compare* Defendants' SoF, [ECF No. 53], ¶ 17, 19; Defendants' Response to Plaintiff's SoF, [ECF No. 65], ¶ 23 *with* Plaintiff's SoF, [ECF No. 59], ¶ 25; Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶¶ 17–18. It is undisputed, though, that Selby did not voluntarily leave S117B. Defendants' SoF, [ECF No. 53], ¶¶ 18, 20.

Faced with Selby's noncompliance, Officers Arteaga and Tobias arrested Selby, handcuffed him, and took him to the campus police station, where he was put in a holding cell. Plaintiff's SoF, [ECF No. 59], ¶¶ 27–30. The parties dispute exactly what occurred during the arrest, including what physical movements Selby made and what force the Officers used, and what happened at the campus police station. *See, e.g.* Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶ 21; Defendants' Response to Plaintiff's SoF, [ECF No. 65], ¶¶ 26–30, 45. None of these factual disputes is material to the motions now before the Court.

Selby was charged with criminal trespass to property, disorderly conduct, and resisting a peace officer. Plaintiff's SoF, [ECF No. 59], ¶ 51; Defendants' SoF, [ECF No. 53], ¶ 23. Officer Arteaga signed the criminal complaints for criminal trespass and resisting a peace office, and McArthur signed the one for disorderly conduct. Defendants' SoF, [ECF No. 53], ¶¶ 24–25. In exchange for a deferred prosecution agreement, Selby agreed to perform 80 hours of community service and to have no further contact with the College. *Id.* ¶¶ 27–28. On June 4, 2015, Selby appeared in court for a proceeding in his criminal case. *Id.* ¶ 29. At this hearing, the State's Attorney represented to the court that Selby had completed the required community service and agreed to dismiss the case. *Id.* The charges against Selby were stricken with leave to reinstate. Plaintiff's Additional SoF, [ECF No. 68], ¶ 10 at p. 10. After the dismissal, Selby

demanded a speedy trial. *See* Defendants' Response to Plaintiff's Additional SoF, [ECF No. 69], ¶ 10.

### B. Procedural History

On August 9, 2017, Selby filed his First Amended Complaint in this case. The Complaint contains eight counts. In Count I, Selby alleges a claim against Officer Arteaga, Officer Tobias, and McArthur under 42 U.S.C. § 1983 for violating Selby's constitutional rights. Complaint, [ECF No. 44], ¶¶ 33–34. In Counts III through VI, Selby alleges claims under Illinois law against Officers Arteaga and Tobias for assault (Count III), battery (Count IV), false imprisonment (Count V), and false arrest (Count VI). *Id.* ¶¶ 45–52. In Count VII, Selby alleges a claim against Officer Arteaga, McArthur, and Defendant Board of Trustees of Moraine Valley Community College, District No. 524, a/k/a Moraine Valley Community College ("the Board of Trustees") for malicious prosecution. *Id.* ¶¶ 53–57. Finally, in Counts II and VIII, Selby alleges claims against the Board of Trustees under 42 U.S.C. § 1983 for maintaining several policies, practices, or customs that exhibited deliberate indifference to students' constitutional rights (Count II) and for respondeat superior liability arising out of the assault, battery, and false imprisonment allegedly committed by Officers Arteaga and Tobias (Count VIII).

As noted above, both sides have filed motions for partial summary judgment. Selby's Motion is limited to the § 1983 false arrest claim against Officers Arteaga and Tobias. Plaintiff's Motion for Partial Summary Judgment, [ECF No. 57], at 1. Defendants' Motion is not so narrow. McArthur seeks summary judgment on the § 1983 false arrest and excessive force claims alleged in Count I. Defendants' Motion for Partial Summary Judgment, [ECF No. 52], ¶ 1. Officers Arteaga and Tobias challenge the false arrest claims alleged in Counts I and VI and the false imprisonment claim alleged in Count V. *Id.* ¶¶ 2, 3. Finally, Officer Arteaga,

8

McArthur, and the Board of Trustees seek summary judgment on the malicious prosecution claim alleged in Count VII. *Id.* ¶ 4.

## II. LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of fact, a district court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). And the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, a court does not "evaluate the weight of the evidence, judge the credibility of witnesses or determine the ultimate truth of the matter" but rather "determine[s] whether there exists a genuine issue of triable fact." *Chelios v. Heavener*,

520 F.3d 678, 685 (7th Cir. 2008) (citation omitted). The court cannot make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Anderson*, 477 U.S. at 255; *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1138 (7th Cir. 1994); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Rather, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court, therefore, must look at the evidence as a jury might, construing the record in the light most favorable to the nonmoving party and avoiding a temptation to decide which party's version of the facts is more likely true. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).

## III. DISCUSSION

There are two motions for summary judgment now before the Court. The Court will address each count implicated by the parties' motions.

### A. Count I: False Arrest Claim under § 1983 against Officers Arteaga and Tobias

Both Selby and Defendants have moved for summary judgment on the portion of Count I that asserts a false arrest claim under § 1983 against Officers Arteaga and Tobias. Plaintiff's Motion for Partial Summary Judgment, [ECF No. 57], at 1; Defendants' Motion for Partial Summary Judgment, [ECF No. 52], ¶ 2. Selby's sole argument in support of his motion is that the Officers did not have probable cause to arrest him for criminal trespass to real property or disorderly conduct. Plaintiff's Motion for Partial Summary Judgment, [ECF No. 57], at 1. Defendants contend they are entitled to summary judgment because the Officers had probable cause to arrest Selby for both charges or, at a minimum, because the Officers are entitled to qualified immunity. Defendants' Motion for Partial Summary Judgment, [ECF No. 52], ¶ 2.

Neither party addresses whether Officers Arteaga and Tobias had actual or arguable probable cause to arrest Selby for resisting arrest.

To prevail on a false arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest. *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). The existence of probable cause is "an absolute bar" to a false arrest claim. *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010); *see also Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). Probable cause to believe that *any* crime has been committed will preclude a false arrest claim, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007); *see also District of Columbia v. Wesby*, —— S. Ct. —— (2018) (slip op., at 4 n.2); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017).

When determining whether probable cause existed, the court examines the facts and circumstances known to the police officer at the time of arrest. *Neita*, 830 F.3d at 497; *Abbott*, 705 F.3d at 714; *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010). Probable cause exists if the facts and circumstances "are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita*, 830 F.3d at 497 (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). Although the probable cause standard "requires something more than a hunch," *id.*, it "is not a high bar" and does not demand "an actual showing of [criminal] activity," *Wesby*, —— S. Ct. —— (slip op., at 7). Instead, all that is necessary is "a probability or substantial chance of criminal activity." *Id.* Fundamentally, probable cause is a "practical, commonsense standard that requires only the type of fair

probability on which reasonable people act," and it "inherently allows room for reasonable mistakes." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013).

The doctrine of qualified immunity provides "an extra layer of protection" to an officer. *Thayer*, 705 F.3d at 247. Even if probable cause did not actually exist, an officer "is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed." *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015) (quoting *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012)) (internal quotation marks omitted). This sometime is referred to as "arguable probable cause." *Id.* "Although closely related, a determination of actual probable cause is separate and distinct from a determination of 'arguable probable cause . . . .'" *Id.*

The first of the two predicate offenses implicated by the parties' motions is criminal trespass to real property—or "criminal trespass," for short—which is prescribed by 720 ILL. COMP. STAT. 5/21-3. The parties focus on subsection (a)(3) of the statute, which provides that a person commits criminal trespass when he "remains upon the land of another, after receiving notice from the owner or occupant to depart." *Id.* 5/21-3(a)(3). Selby's continued presence in room S117B, despite being told to leave by a College employee, would lead a reasonable police officer to conclude that Selby "remain[ed] upon the land of another." No party argues otherwise. The issue about which the parties disagree is whether, based on the facts and circumstances known to Officers Arteaga and Tobias at the time of arrest, a reasonable officer would have been warranted in believing that Selby had received notice "from the owner or occupant" to depart S117B. It is worth emphasizing that the issue before this Court is whether there was probable cause or arguable probable cause to arrest Selby for criminal trespass, not whether Selby actually violated 720 ILL. COMP. STAT. 5/21-3(a)(3).

In the Court's view, this is not a particularly close question. Both Officer Arteaga and Officer Tobias heard a call from dispatch over their radios saying that a student was refusing to leave a room. Defendants' SoF, [ECF No. 53], ¶ 14; *see also* Plaintiff's SoF, [ECF No. 59], ¶¶ 18, 19. When Officer Arteaga arrived at room S117B, McArthur confirmed what Officer Arteaga had heard over his radio, saying that Selby arrived late to the workshop, that McArthur had told Selby to leave, and that Selby refused. Plaintiff's SoF, [ECF No. 59], ¶ 20; Defendants' SoF, [ECF No. 53], ¶¶ 14, 15. Officer Arteaga and, later, Officer Tobias made contact with Selby, told him to leave the room, and warned that he would be arrested if he did not leave. Plaintiff's SoF, [ECF No. 59], ¶¶ 22, 25, 31–32, 37, 58–59; Defendants' SoF, [ECF No. 53], ¶¶ 17–20. At no point did the instructor leading the workshop or any other employee of the College tell the Officers that Selby should be allowed to remain. From the totality of the circumstances, a reasonable officer could conclude that the College, through its agents, had given notice to Selby to depart from room S117B.

Selby essentially overlooks the call from dispatch. Although the call is not the sole basis of probable cause in this case, the information provided to the Officers deserves some attention because police officers can rely on "reasonable information relayed to them from a police dispatcher." *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001). Dispatch only referred to "a student," but Officers Arteaga and Tobias learned before the arrest that Selby was the student referred to by dispatch. Further, a reasonable police officer could conclude that a student's "refusal" to leave implies that he had been told to leave the room. *See Refusal*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("1. The denial or rejection of something offered or demanded."). Dispatch did not specify *who* asked Selby to leave. This missing fact, though, does not make the information that dispatch provided irrelevant to the probable cause inquiry.

Selby first argues that the information provided to Officer Arteaga by McArthur cannot support probable cause. Although articulated in slightly different terms throughout his briefs, Selby's central contention is that Officer Arteaga did not know any facts that would have led a reasonable officer to believe McArthur had authority to remove a student. McArthur testified during his deposition that Officer Arteaga and he knew each other before the incident at issue in this lawsuit. Deposition of General McArthur, [ECF No. 54-2], at 49 ("Q. Did he ask you who you were? A. He knew who I was. He knows me from around campus."). The Court understands this testimony to mean that Officer Arteaga knew McArthur was an employee of the College. The parties have not cited any evidence in the record that is contrary to McArthur's deposition testimony. Although Officer Arteaga knew McArthur was a College employee, it is undisputed that he knew McArthur was not the instructor of the financial literacy workshop and that Officer Arteaga had no reason to believe McArthur was connected with the workshop in any way. Plaintiff's SoF, [ECF No. 59], ¶ 52; Plaintiff's Additional SoF, [ECF No. 68], ¶ 8 at p. 10.

There is no reason why a reasonable officer would assume that, in general, only employees overseeing a specific workshop have authority to tell a student to leave the room where the workshop is being held. The College is a large institution with many employees. There are a variety of reasons why a student could be removed from a workshop and some of those reasons may fall outside the knowledge or responsibility of those leading the workshop. Even with respect to something like a late arrival, it makes sense that another College employee who knew about the problem could step in to resolve the situation, thereby ensuring that the employees who are conducting the workshop are not distracted from what they are doing. This understanding is consistent with Illinois law which generally permits an employee of the owner or occupant of real property to give the required notice to depart in his capacity as the owner's or

occupant's agent. *See, e.g., Kampinen v. Martinez*, 102 F. App'x 492, 497 (7th Cir. 2004) (Notice to leave was given by a Mercantile Exchange employee who was staffing a receptionist desk.).

Officer Arteaga knew that someone had contacted dispatch and that dispatch took the information seriously enough to make a call over the radio. When Officer Arteaga arrived at S117B, McArthur, a College employee, was waiting outside the door for him. McArthur seemed to know what was going on as he provided the same information relayed by dispatch, with some additional detail. Other than McArthur's lack of involvement with the workshop, Selby does not identify any facts or circumstances that would have led a reasonable officer to question McArthur's authority. Moreover, throughout the entire episode, no other College employee, including the instructor of the workshop and those assisting him, said Selby should have been allowed to stay, even though they seemingly had the opportunity to do so. Based on these facts and circumstances, the Court finds a reasonable officer would have been warranted in believing that McArthur had the authority to order Selby to leave the room.[3]

Selby's next argument is that Officers Arteaga and Tobias also did not have authority to order Selby to leave because statements by police officers do not constitute notice by "the owner or occupant." Selby cites *People v. Hsiu Yan Chai* in support of this argument. 16 N.E.3d 887 (Ill. App. Ct. 2014). *Hsiu Yan Chai* cannot bear the weight that Selby places on it for two reasons. In that case, the Illinois Appellate Court recognized that police officers *can* provide notice to depart when the owner or occupant requests that the officers do so. *Id.* at 896. Officers Arteaga and Tobias had reason to believe the owner or occupant had made such a request in this

---

[3] In their briefs, the parties do not address the fact that it seems Officer Tobias did not speak with McArthur before the arrest. *See* Deposition of William Tobias, [ECF No. 54-4], at 26, 37. In any event, the facts and circumstances known to Officer Tobias through the dispatch call and his interaction with Officer Arteaga and Selby were sufficient to support probable cause.

case based on the call from dispatch and McArthur's conversation with Officer Arteaga. More importantly, Officers Arteaga and Tobias were campus police officers and employees of the College. As already noted, an employee of the owner or occupant of real property generally can give the required notice to depart in his capacity as the owner or occupant's agent. *See, e.g.,* *Kampinen*, 102 F. App'x at 497. In the Court's view, a reasonable officer would be warranted in believing that, in their capacity as campus police officers and employees of the College, Officers Arteaga and Tobias could provide notice on behalf of the College. *See Cross v. City of Chicago*, 4 F.3d 996 (7th Cir. 1993); *Shelton v. Wright*, 2013 WL 212910, at *8 (N.D. Ill. Jan. 18, 2013).

Selby also argues that Officers Arteaga and Tobias ignored Selby's attempts to clarify the situation. The parties dispute what Selby said to the Officers. The following is Selby's version of events. Selby provided his name and identified his name on the attendance sheet. Plaintiff's SoF, [ECF No. 59], ¶ 23; Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶ 17; Deposition of Ronald Selby, [ECF No 54-1], at 50. Selby asked the Officers who told them that Selby should not be in the room, but the Officers did not respond. Plaintiff's SoF, [ECF No. 59], ¶ 23; Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶¶ 17, 18, 20; Plaintiff's Additional SoF, [ECF No. 68], ¶ 9 at p. 10; Deposition of Ronald Selby, [ECF No 54-1], at 50. After that, Selby stood quietly and did not say anything else. Deposition of Ronald Selby, [ECF No 54-1], at 51.[4]

A police officer cannot "close his eyes to" or "consciously disregard" information that would clarify a situation. *Dean v. City of Chicago*, 896 F. Supp. 2d 699, 704 (N.D. Ill. 2012) (quoting *Mahnke v. Garrigan*, 428 Fed. App'x 630, 635 (7th Cir. 2011); *McBride v. Grice*, 576

---

[4] In his Local Rule 56.1(b)(3) Statement, Selby says he tried to "provide [the Officers] with information as to why he had a right to be in the class" and to "explain to the [O]fficers that he was properly on the premises." Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶¶ 17, 18. These are general statements and are not supported by the cited evidence except to the extent that they are consistent with the Court's description above.

F.3d 703, 707 (7th Cir. 2009)). The factual summary in the preceding paragraph, though, illustrates that Selby did not provide clarifying information. Selby told the Officers his name and showed that he had signed the attendance sheet. He did not provide any other information, and Selby's questions did not convey new facts to the officers and would not necessarily have prompted a reasonable officer to conduct further investigation. "[T]he Fourth Amendment does not require an officer with probable cause to arrest to wait while pursuing further investigation." *Stokes*, 599 F.3d at 624. At the time of arrest, Officers Arteaga and Tobias knew sufficient facts and circumstances to establish probable cause and the information provided by Selby did not undercut what they knew.

Finally, Selby repeatedly says that a student cannot be arrested for being late to a class and that Officers Arteaga and Tobias had not previously arrested a student merely for being late. This rhetorical point is not persuasive. Selby was not arrested for criminal trespass because he was late to class and criminal trespass, as defined in Illinois law, does not focus on whether a person arrived late or early to a premise. He was arrested because he did not comply when told to leave S117B by the College's agents, and that is the type of conduct covered by Illinois' criminal trespass law. Even if McArthur needlessly escalated the situation by calling the campus police after Selby had arrived for the class, which frankly may be the case here, that does not mean that Officers Arteaga and Tobias lacked probable cause to arrest Selby based upon the facts they knew at the time. And it is irrelevant to the issue of trespass that Selby believes he should have been allowed to remain in the room even though he arrived a bit late.

For all of these reasons, Officers Arteaga and Tobias had probable cause to arrest Selby for criminal trespass to real property.[5] The existence of probable cause for this one crime is an

---

[5] For the same reasons, the Court would conclude that Officers Arteaga and Tobias had arguable probable cause, even if they did not have probable cause. That would entitle the Officers to qualified immunity.

absolute bar to Selby's false arrest claim. *Neita*, 830 F.3d at 497; *Holmes*, 511 F.3d at 682. The Court therefore need not consider whether the Officers had probable cause or arguable probable cause to arrest Selby for disorderly conduct.

## B. Count I: False Arrest and Excessive Force Claims under § 1983 against McArthur

Defendants have moved for summary judgment on the § 1983 false arrest and excessive force claims asserted against McArthur in Count I on the basis that McArthur did not arrest or utilize any force against Selby. Defendants' Motion for Partial Summary Judgment, [ECF No. 52], ¶ 1; *see also* Complaint, [ECF No. 44], ¶¶ 33–34. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). That is, a defendant must have "caused or participated" in the constitutional deprivation. *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Kozel v. Vill. of Dolton*, 804 F. Supp. 2d 740, 745 (N.D. Ill. 2011).

McArthur did not cause or participate in any false arrest. McArthur did not arrest Selby. Selby's false arrest claim against McArthur is based entirely on McArthur's supposed role in the arrest performed by Officers Arteaga and Tobias. The Court already has found that there was probable cause to support that arrest. Because Officer Arteaga and Tobias' arrest of Selby did not violate the Fourth Amendment, McArthur cannot have caused or participated in a false arrest.

Even if Officers Arteaga and Tobias had falsely arrested Selby, the Court questions whether McArthur's conduct would rise to the level of causing or participating in that arrest. There is no evidence in the record that McArthur ever suggested, encouraged, or requested that Selby be arrested. The undisputed fact is that he called the campus police to have Selby removed from room S117B, not to have Selby arrested. Defendants' SoF, [ECF No. 53], ¶ 12; *see also*

Plaintiff's SoF, [ECF No. 59], ¶¶ 18, 19. McArthur's unrebutted deposition testimony is that "[c]rime didn't cross [his] mind" during the call. Deposition of General McArthur, [ECF No. 54-2], at 46. When Officer Arteaga arrived at room S117B, McArthur said Selby refused to leave when told to do so and then identified Selby to Officer Arteaga. Defendants' SoF, [ECF No. 53], ¶ 15. Again, no party claims that McArthur referred to arresting Selby. After he spoke to Officer Arteaga, McArthur was no more than a bystander as Officers Arteaga and Tobias engaged with and eventually arrested Selby. Moreover, the Officers did not immediately arrest Selby based solely on what McArthur said. Instead, they spoke with Selby and directed him to leave; they did not arrest Selby until he refused to comply with their order. In any event, the Court need not definitively resolve the parties' dispute about whether McArthur caused or participated in a hypothetical false arrest that did not actually occur.[6]

That leaves Selby's excessive force claim against McArthur. Defendants argue that McArthur did not cause or participate in the use of force against Selby. Because Selby will bear the burden at trial of proving that McArthur was personally involved in the Officers' alleged use of excessive force, he must "make a showing sufficient to establish the existence of [that] element" at the summary judgment stage. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797–98 (7th Cir. 2017); *see also Cole v. Janssen Pharm., Inc.*, 2017 WL 6372777, at *3 (E.D. Wis. Dec. 12, 2017). Selby does not cite any evidence showing or make any argument explaining how McArthur caused or participated in the use of *any* force against Selby. Selby's default in this regard is not entirely surprising. McArthur did not himself use force against Selby. As already noted, when Officers Arteaga and Tobias allegedly used force against Selby, McArthur was no

---

[6] McArthur's role in causing the arrest is complicated by the fact that Selby contends (and Defendants dispute) that the information McArthur provided to the campus police was false. *See* Plaintiff's Response to Defendants' SoF, [ECF No. 68], ¶ 12. Neither party addresses this issue. In any event, there is no evidence that Officers Arteaga or Tobias knew that McArthur provided false information to the campus police.

more than a bystander. He did not prompt, encourage, or in any way cause the Officers to use force against Selby, much less excessive force. Therefore, Defendants are entitled to summary judgment with respect to the false arrest and excessive force claims against McArthur in Count I.

### C. Counts V and VI: False Imprisonment and False Arrest under Illinois Law against Officers Arteaga and Tobias

Defendants have moved for summary judgment on Counts V and VI, in which Selby asserts claims against Officers Arteaga and Tobias for false imprisonment and false arrest under Illinois Law. Complaint, [ECF No. 44], ¶¶ 49–52. The elements of a false imprisonment claim are: "(1) that the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.*, without probable cause) to believe that an offense was committed by the plaintiff." *Grainger v. Harrah's Casino*, 18 N.E.3d 265, 276 (Ill. App. Ct. 2014). The elements of a false arrest claim are: (1) the plaintiff "was restrained by the defendant;" and (2) "the defendant acted without probable cause." *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 70, 880 N.E.2d 1033, 1044 (2007). The existence of probable cause "is an absolute bar" to false arrest and false imprisonment claims. *Holm v. Clark*, 2012 WL 1015956, at *6 (N.D. Ill. Mar. 23, 2012).

Under Illinois law, "[p]robable cause 'is a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged.'" *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010) (quoting *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006)). The probable cause inquiry is purely objective and focuses on the "evidence available to the police at the time of the arrest." *Johnson v. Dossey*, 878 F. Supp. 2d 905, 915–16 (N.D. Ill. 2012). No party argues in this case that there is a difference between the probable

cause standard under federal law and Illinois law that is material to the motions for summary judgment now before the Court.

Defendants contend that Officers Arteaga and Tobias had probable cause to arrest Selby for criminal trespass to real property and for disorderly conduct. Defendants do not develop any new arguments in this vein and, instead, simply refer back to the points that they made with respect to the § 1983 false arrest claim. Likewise, Selby simply says probable cause does not exist and references his prior discussion of the § 1983 false arrest claim. The Court will follow the parties' lead and not engage in a new, extended evaluation. Construing the facts and inferences in Selby's favor, Officers Arteaga and Tobias had probable cause under Illinois law to arrest Selby for criminal trespass to real property for the same reasons provided during the Court's analysis of Selby's § 1983 false arrest claim earlier in this Memorandum Opinion and Order. That is an absolute bar to Selby's state law false imprisonment and false arrest claims. Therefore, Defendants are entitled to summary judgment on Counts V and VI.

### D. Count VII: Malicious Prosecution under Illinois Law against Officer Arteaga, McArthur, and the Board of Trustees

Defendants have moved for summary judgment on Count VII, in which Selby asserts a malicious prosecution claim against Officer Arteaga, McArthur, and the Board of Trustees. Complaint, [ECF No. 44], ¶¶ 52–57. The elements of a malicious prosecution claim under Illinois law are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921–22 (7th Cir. 2001). "All of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution." *Id.*

21

Before addressing the parties' arguments, additional factual background concerning the underlying criminal proceeding against Selby is necessary. Officer Arteaga signed criminal complaints against Selby for criminal trespass and resisting a peace office, and McArthur signed a criminal complaint against Selby for disorderly conduct. Defendants' SoF, [ECF No. 53], ¶¶ 24–25. On April 28, 2015, Selby appeared in the Fifth Municipal District of Cook County in front of Judge Michael Kane. Defendants' SoF, [ECF No. 53], ¶ 27; Transcript of Hearing on April 28, 2015 ("April Transcript"), [ECF No. 54-6], at 11. During the hearing, State's Attorney Sean Brown told Judge Kane:

> This matter will be handled by deferred prosecution. The defendant has agreed to perform 80 hours of community service. Upon completion, the State will dismiss the charge. The [d]efendant has also agreed not to have any further contact with Moraine Valley College.

April Transcript, [ECF No. 54-6], at 15; *see also id.* at 14 (Selby's attorney asked the judge if he "could have five seconds with the State's [A]ttorney here to respond to the offer that was made to the prior counsel."); Defendants' SoF, [ECF No. 53], ¶ 27. A few moments later, Judge Kane told Selby, "Your lawyer worked you out a good deal, but you have to live up to your end, which is you have to do the community service and you can't go anywhere near Morraine [sic] Valley." April Transcript, [ECF No. 54-6], at 15–16. During his deposition, Selby admitted that he understood Judge Kane ordered him to complete community service and that, if he did so, he would not go to jail. Defendants' SoF, [ECF No. 53], ¶ 28.

Selby completed his required community service at the Fellowship Missionary Baptist Church. *Id.* On June 4, 2015, he appeared in the Fifth Municipal District of Cook County in front of Judge John Gallagher. *Id.* ¶ 29. At this short hearing, a different State's Attorney, Kate Foresman, told Judge Gallagher that Selby had completed the 80 hours of community service. *Id.*; Transcript of Hearing on June 4, 2015 ("June Transcript"), [ECF No. 54-6], at 21. Foresman

also informed Judge Gallagher that Brown had "offered 80 hours of community service in exchange for a dismissal on this case." June Transcript, [ECF No. 54-6], at 21. "Based on that," Foresman moved to strike the case with leave to reinstate. *Id.* Judge Gallagher dismissed the case and, after that, Selby's attorney made a demand for a speedy trial. *Id.*; *see also* Plaintiff's Additional SoF, [ECF No. 68], ¶ 10 at p. 10. Judge Gallagher said he would mark the file to note the demand and the hearing ended. June Transcript, [ECF No. 54-6], at 21

Defendants argue that Selby cannot satisfy the second element of his malicious prosecution claim—that is, the underlying proceeding terminated in his favor—because the State's Attorney dismissed the charges against Selby based on his compliance with what in essence was a plea bargain. Under Illinois law, the plaintiff bears the burden of proving a favorable termination. *Swick v. Liautaud*, 169 Ill. 2d 504, 513 (Ill. 1996); *see also id.* (noting that the plaintiff must show a *nolle prosequi* "was entered for reasons consistent with his innocence"). When "a prosecutor formally abandons" a criminal proceeding "via a *nolle prosequi*," that termination is considered to be "in favor of the defendant . . . unless [the prosecutor] abandons the prosecution for reasons not indicative of the defendant's innocence." *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997). The state's decision to dismiss a criminal case "is not indicative of innocence when the *nolle prosequi* is the result of an agreement or compromise with the accused." *Swick*, 169 Ill. 2d at 513; *see also Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013) ("A prosecutor's dismissal of a criminal charge *may* imply innocence, but *Swick* added that it does not do so when it is part of a plea bargain."); *Washington*, 127 F.3d at 557 ("The abandonment of the proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or compromise with the accused . . . ."); *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d

1347, 1353 (Ill. App. Ct. 1997) ("For example, if the dismissal was merely a formal means of securing a negotiated settlement, it cannot serve as the basis for a malicious prosecution action.").

In this case, the undisputed facts show that Selby entered into a deferred prosecution agreement to secure dismissal of the criminal charges against him. During the April 28 hearing, Selby's attorney referenced an "offer" made to Selby's prior counsel by the prosecution, and State's Attorney Brown said the charges would be dismissed upon completion of the community service. Even Judge Kane referred to the arrangement as a "good deal" that Selby had to "live up to." Consistent with this understanding, Foresman said the requirement of community service was "offered . . . in exchange" for dismissal. Foresman moved to strike with leave to reinstate "[b]ased on" Selby's compliance with the agreement. Because Selby's underlying criminal proceeding was dismissed as a result of his compliance with the agreement or compromise that he entered into with the State's Attorney, the dismissal is not indicative of Selby's innocence under *Swick* and its progeny.

Relying on *Velez v. Avis Rent A Car System, Incorporated*, Selby claims that a demand for a speedy trial is indicative of a defendant's innocence. 721 N.E.2d 652 (Ill. App. Ct. 1999). There are three problems with Selby's reliance on this lone authority. In *Velez*, there was no indication that the abandonment of the prosecution of the underlying criminal case was the result of an agreement or compromise. *Id.* at 656. Further, the plaintiff in *Velez* demanded a speedy trial *before* dismissal while Selby made such a demand after Judge Gallagher dismissed the case against him with leave to reinstate. *Id.* at 653, 656. Finally, the Illinois Appellate Court's opinion cannot be read to support a broad rule that a speedy trial demand on its own is indicative of innocence because the court's analysis emphasized that the complaining witness twice refused

to proceed to trial. *Id.* at 656–57; *see also Garcia v. City of Chicago*, 2012 WL 601844, at *10 (N.D. Ill. Feb. 23, 2012). Selby's speedy trial demand cannot save his malicious prosecution claim.

Selby also argues that the prosecution could not have obtained a guilty verdict in the underlying criminal proceeding because there was no probable cause to arrest him. Again, there are multiple flaws with Selby's position. Selby focuses on whether probable cause existed at the time of arrest, but the relevant point in time for his malicious prosecution claim is the subscribing of the criminal complaints. *Porter v. City of Chicago*, 912 N.E.2d 1262, 1273 (Ill. App. Ct. 2009); *Howard v. Firmand*, 880 N.E.2d 1139, 1142 (Ill. App. Ct. 2007). At a more fundamental level, favorable termination and lack of probable cause are separate elements of a malicious prosecution claim. Selby cannot establish the former solely by proving the latter. Relatedly, it is not "proper" for the Court "to look past the form of a plea bargain," such as the one that Selby entered into, "to inquire what would have happened had a compromise not been reached." *Cf. Bridewell*, 730 F.3d at 677.

For all of these reasons, the Court finds that, even construing the facts and inferences in Selby's favor, Selby cannot establish the second element of his malicious prosecution claim. As already noted, "the absence of even one element will preclude recovery for malicious prosecution." *Logan*, 246 F.3d at 921–22. Therefore, Defendants are entitled to summary judgment on Count VII.

Because of this conclusion, the Court need not address at length Defendants' contentions about the fourth and fifth elements of Selby's malicious prosecution claim. The Court notes, though, that Defendants do not engage with the issue of whether, based on the facts and circumstances known to the respective signer of each complaint at the time of signing, there was

probable cause to support the charges of resisting a peace officer and disorderly conduct. Because malicious prosecution is an offense-specific claim and malice can be inferred from an absence of probable cause, *Williams v. City of Chicago*, 733 F.3d 749, 759–60 (7th Cir. 2013), Defendants' arguments about the fourth and fifth elements are insufficient (even if correct) to justify summary judgment in their favor on the entirety of Count VII. This does not change the fact that Defendants are entitled to summary judgment because the underlying criminal proceeding was not terminated in Selby's favor.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment [ECF No. 57] is denied and Defendants' Motion for Partial Summary Judgment [ECF No. 52] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 20, 2018